## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MICHAEL B. CONNELLY, | ) | |
| | ) | |
| Plaintiff, | ) | 4:06CV3102 |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner, | ) | |
| | ) | |
| Defendant. | ) | |

Michael B. Connelly (Connelly) filed an application for disability benefits under the Social Security Act (Act), 42 U.S.C. §§ 401 *et seq.*, on October 21, 2003. The Social Security Administration (SSA) denied benefits initially and on reconsideration. On April 28, 2005, an administrative law judge (ALJ) held a hearing and, on August 26, 2005, determined Connelly was not disabled under the Act. The Appeals Council denied Connelly's request for review on March 17, 2006. Connelly now seeks judicial review of the ALJ's determination as it represents the final decision of the Commissioner of the Social Security Administration.[1]

Connelly filed a brief (Filing No. 14) and a reply brief (Filing No. 17) in support of this administrative appeal. The Commissioner filed the transcript of the administrative record (TR.) (Filing No. 10), Supplemental Certification (Filing No. 15) appending a missing page from the original administrative record, and a brief (Filing No. 16) in opposition of Connelly's appeal for benefits. Connelly appeals the ALJ's decision and asks that the case be remanded for an award of benefits for five reasons: (1) the ALJ failed to accept as controlling the limitations placed by the claimant's treating physician, Jon Petterson, M.D.; (2) the ALJ failed to give Dr. Petterson's opinions the greatest weight under the circumstances; (3) the ALJ failed to incorporate all of the claimant's documented limitations and conditions into the hypothetical questions posed to the vocational expert (VE); (4) the

---

[1] The parties consented to jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). **See** Filing No. 13.

ALJ failed to properly evaluate the 2003 disability determination of the Office of Personnel Management, Federal Employees System (Post Office); and (5) the ALJ improperly applied the ***Polaski*** factors when evaluating the claimant's credibility regarding subjective allegations of his physical condition. **See** Filing No. 14.  This court has jurisdiction to review the final decision of the Commissioner of Social Security under 42 U.S.C § 405(g) (2005). The court has reviewed the record, the ALJ's evaluation and findings, the parties' briefs, the transcript, and applicable law, and finds the ALJ's ruling that Connelly is not disabled should be reversed because it is not supported by substantial evidence in the record.

## PROCEDURAL BACKGROUND

Connelly applied for disability benefits on October 21, 2003, pursuant to the Act. Connelly alleged an inability to engage in any substantial and gainful work activity after October 10, 2003, due to spinal stenosis, left herniation L-4, L-5, intractable back pain, high cholesterol and degenerative disc disease (TR. 75-78, 111).  The SSA denied benefits initially and on reconsideration (TR. 31-35, 42-44).  Thereafter, on April 28, 2005, ALJ Jan E. Dutton held a hearing and issued a decision on August 26, 2005 (TR.12, 15-26).  The ALJ determined Connelly was not disabled pursuant to 20 C.F.R. § 404.1520(f) and was not eligible for disability benefits under the Act (TR. 25-26).  The Appeals Council denied Connelly's request for review on March 17, 2006 (TR. 6).

## FACTUAL BACKGROUND

### A.    Medical Records

Connelly filed his application for disability benefits alleging he became disabled on October 10, 2003, due to spinal stenosis, left herniation L-4, L-5, intractable back pain, high cholesterol and degenerative disc disease (TR. 75-78, 111).  Connelly was born in 1943 (TR. 75).  The medical records show Connelly has a history of treatment for low back problems, initially suffering an injury in a helicopter crash in Vietnam in 1969 (TR. 239, 283).    Subsequently, Connelly experienced lifting or spontaneous injuries, which exacerbated his back problems (TR. 187, 203).

Initially, the claimant saw only his primary treating physician, Dr. Petterson, who the claimant had seen since January 18, 1989, for back pain (TR. 254). A report from Dr. Petterson, dated January 11, 2002, shows that Mr. Connelly was evaluated for complaints of back pain he had experienced for approximately two weeks (TR. 187). The claimant reported during the exam that he was experiencing spasms, and that his pain worsened when standing during the day at work (TR. 187). Dr. Petterson noted that the claimant's previous back injuries had completely resolved (TR. 187). A physical exam revealed Connelly exhibited full range of motion, straight leg raising to 90 degrees and he could get up on his heels and toes, and squat without difficulty (TR. 187). Dr. Petterson diagnosed Connelly with lumbar strain and recommended piroxicam, for pain, and lumbar exercises (TR. 187). Connelly returned to Dr. Petterson on July 12, 2002, with recurring back pain, which seemed to bother Connelly most when standing at work (TR. 185). An MRI requested by Dr. Petterson revealed a small left lateral disc protrusion of L4-L5, extending into the left neuroforamen and severe congenital stenosis of the spinal canal of L4-L5 (TR. 184).

Dr. Petterson referred Connelly to a neurologist, Guy Gehling, M.D., for a neurological exam, which was conducted on August 13, 2002 (TR. 203). On physical exam, the claimant exhibited exquisite sensitivity to pin, normal light touch, vibratory and proprioception; and back range of motion, especially extension and lateral flexion, produced increased back pain, but no radicular pain (TR. 207). Dr. Gehling diagnosed lumbar spondylosis with mechanical back pain, and opined that the claimant was not currently a candidate for surgery, nor epidural steroid injections (TR. 207-207). Dr. Gehling recommended conservative therapy including weight loss, a spine stabilization program and anti-inflammatory medication (TR. 208). Further, Dr. Gehling completed a Duty Status Report based on the August 13, 2002 examination, opining that Connelly was able to perform full-time work as a window service tech, meeting the requirements of the job, but could only stand for one hour at a time (TR. 209-210).

Despite conservative treatment, including analgesics, physical therapy and work modification, the claimant continued to experience back pain, and was evaluated in numerous follow-up appointments with Dr. Petterson. On January 16, 2004, Connelly saw

3

Dr. Petterson forh back pain and Dr. Petterson prescribed hydrocodone for pain (TR. 236). On February 16, 2004, Connelly returned with back pain stating the hydrocodone helped only minimally and the pain would return in the afternoon (TR. 236). Dr. Petterson prescribed morphine sulfate for pain (TR. 236). On March 1, 2004, Connelly reported the morphine sulfate worked well for his pain and he had no adverse side effects (TR. 236). Similarly, on April 6, 2004, Connelly reported he was doing well (TR. 135). On June 1, 2004, Connelly sought re-fills on his pain medication and reported he limits his activities to preserve his narcotics (TR. 233). Dr. Petterson reviewed methods of controlling pain other than taking medication (TR. 233).

The claimant relocated from Oregon to Nebraska and began treating with John Mazour, M.D., on July 6, 2004. Dr. Mazour noted on neurological exam that deep tendon reflexes were absent in the lower extremities bilaterally, but reported no other significant findings (TR. 268). Further, Dr. Mazour noted that the claimant had been prescribed morphine by his previous physician; and, therefore, he would continue the medications until the claimant attended a neurological consultation (TR. 268). Dr. Mazour referred Connelly to Douglas Long, M.D., for a neurological consultation (TR. 268).

On August 9, 2004, Connelly saw Ravishankar V. Kalaga, M.D. at the Veteran's Administration Medical Center (VAMC) in Nebraska, for chronic back pain (TR. 289-293). Dr. Kalaga noted Connelly had a weak pulse in his lower extremities and was experiencing occasional depression (TR. 291-292). Dr. Kalaga changed Connelly's pain medication to piroxicam (TR. 292).

The claimant was evaluated at the neurology clinic on September 8, 2004 (TR. 264-265). Physical exam revealed no tenderness in the lumbar spinous processes or the paravertebral musculature (TR. 264-265). Straight leg raise did not produce radicular pain or paresthesias (TR. 265). The claimant demonstrated good strength, tone and bulk with good hip flexion, extension, dorsiflexion, plantar flexion and extensor hallucis longus strength bilaterally (TR. 265). Further, no gross joint instability or crepitus was noted in the lower extremities bilaterally (TR. 265). Deep tendon reflexes at the knee jerk and ankle jerk were hypoactive and symmetrical; and no sensory changes were noted to light touch of the lower extremities bilaterally (TR. 265). There was no evidence of clonus noted at the

4

ankles bilaterally and toes were downward going to plantar stimulation bilaterally (TR. 265). The examiner noted that there was no edema of the lower extremities; and good peripheral pulses were present (TR. 265). Connelly reported excessive fatigue, swelling of the hands and that he had stopped taking his pain medication (TR. 264). A report from Dr. Long, dated September 29, 2004, indicated that MRI scans confirmed mild degenerative disk disease at L4-L5 and L5-S1, with a disk protrusion at L5-S1 on the left; and he noted that the claimant complained of back pain only and did not have any radicular complaints (TR. 261). Dr. Long opined surgical intervention was not indicated, and recommended that Connelly continue the non-operative management regimen, including nonsteroidal anti-inflammatory medications, periodic epidural steroid injections, and exercise (TR. 261).

On January 25, 2005, the claimant was evaluated by Judson Jones, M.D., at the VAMC in Omaha, Nebraska (TR. 283-286). Dr. Jones noted that, despite ongoing conservative treatment, the claimant continued to complain of low back pain, but no sciatica or radiculopathy at this time (TR. 283). During clinical interview, Connelly reported that he experienced pain on a constant basis, about a 4-5 in intensity, but was not taking any medication (TR. 283). Connelly stated he experienced flare-ups, rated at a 9-10 in intensity, occurring on a daily basis depending on his activity, and lasting up to three or four days (TR. 283). Connelly reported that during the last 12 months, he had experienced incapacitating pain 1-2 days per month (TR. 283-284). Further, Connelly stated that precipitating factors included physical activity, particularly bending, lifting, twisting, or stooping; cold weather; sitting for 15 to 20 minutes; or standing in place for 10 minutes (TR. 284). Additionally, Connelly reported walking for 15 to 20 minutes precipitates pain, however he can walk for that duration on an even surface at a mild pace (TR. 284). When describing daily activities, including recreational activities, Connelly indicated that he was precluded from performing heavy physical work including raking the yard, mowing and shoveling snow; and that he had discontinued bowling, due to back pain; hunting, due to the prolonged walking; and had decreased his woodworking, due to pain with bending, lifting, or stooping (TR. 284). On physical exam, Connelly performed forward flexion to 90 degrees, exhibiting some pain at full forward flexion; extension to 25 degrees with some discomfort; lateral flexion to 25 degrees; and rotation to the left and right to 20 degrees,

5

exhibiting some pain (TR. 284).  Dr. Jones ordered x-rays of the lumbosacral spine (TR. 285).  Dr. Jones reviewed the x-rays on January 28, 2005, and found they demonstrated mild degenerative lumbar spondylosis and partial sacralization of L-5 (TR. 286).

On February 10, 2005, Connelly reported back pain at 5-6 in intensity with poor relief from piroxicam (TR. 275).  Connelly had stopped taking the piroxicam (TR. 277).  He described the pain as sharp to aching and stated the only medication which provided relief was morphine (TR. 275).  Dr. Kalaga, recommended taking Connelly off of piroxicam and prescribed naproxen for pain (TR. 281).

**B.     Impairment Evaluations**

On January 17, 2003, Dr. Petterson provided the United States Office of Personnel Management with a report briefly describing Connelly's medical history, diagnoses and treatment for his back pain (TR. 241).  Dr. Petterson also stated:

> Physical limitations applicable to diagnosis of Degenerative Disc Disease with Spinal Stenosis and left lateral disc herniation L-4-5.
>    1.    No prolonged standing greater than thirty minutes.
>    2.    No repetitive bending or twisting which would aggravate back pain.
>    3.    No lifting greater than thirty pounds.
>    4.    No activity or situation, which aggravates back pain.

TR. 242.

On January 27, 2004, Richard Alley, M.D., prepared a Residual Physical Functional Capacity Assessment based on Connelly's medical records through December 17, 2003 (TR. 211-216).  Dr. Alley opined Connelly could occasionally lift or carry twenty pounds and frequently lift or carry ten pounds (TR. 212).  Dr. Alley further determined Connelly could stand or walk for six hours and sit for six hours in an 8-hour workday (TR. 212).  Dr. Alley also found Connelly could climb, stoop or crouch occasionally and balance, kneel and crawl frequently (TR. 213).  Dr. Alley found no environmental, visual or manipulative limitations (TR. 213-214).  Dr. Alley stated his conclusions were significantly different from the treating physician's conclusions (TR. 215).  Dr. Alley based these differences on the claimant's

reports of activity including hunting and fishing (TR. 216).  Additionally, Dr. Alley states the medical evidence supports severe spinal stenosis and could reasonably support pain with walking, but not to the degree indicated (TR. 216).

On October 25, 2004, Dr. Petterson prepared a Medical Impairment Evaluation for Connelly in support of Connelly's application for Disability Insurance Benefits (TR. 254-259).  Dr. Petterson described Connelly's diagnoses as intolerable pain due to a back injury, severe Degenerative Disc Disease and severe spondylolysis (TR. 254).  Dr. Petterson stated the severe pain radiates into the legs bilaterally (TR. 255).  The symptoms include decreased range of motion of the lumbar spine and pain with movement (TR. 256).  Dr. Petterson concluded Connelly was unable to continue his previous work or similar work and his condition would worsen by causing him increased pain and mental decompensation if he continued to work (TR. 254).  Dr. Petterson stated the only available treatment is pain control (TR. 255).  Dr. Petterson stated Connelly's prognosis is poor, he suffers pain which is sufficiently severe to interfere with his attention and concentration constantly, and he is not a malingerer (TR. 255).  Dr. Petterson determined Connelly could occasionally lift up to ten pounds, seldom up to twenty pounds and never more than twenty pounds (TR. 257).  Dr. Petterson further determined Connelly could not stand or walk, but could sit for two hours in an 8-hour workday (TR. 257).  Dr. Petterson also found Connelly could never climb, stoop, crouch, crawl or reach above shoulder level (TR. 258).  Dr. Petterson found some environmental and manipulative limitations (TR. 257-258).  Dr. Petterson concluded Connelly would have to shift from sitting, standing or walking every hour and could not work up to three days per week (TR. 258).  Dr. Petterson based his opinion on Connelly's intolerable pain and continual use of narcotic drugs to control the pain (TR. 259).

### C.     Daily Living and Pain Questionnaires

On November 10, 2003, Connelly filled out a questionnaire about his activities of daily living and socialization (TR. 123-129).  Connelly stated no one helped him with his personal needs or grooming (TR. 123).  He stated he lived with his family and prepared some of his own meals (TR. 123-124).  He stated his wife has responsibility for the housework, shopping and handling the money, which has not changed since his disability

(TR. 124-125).  Connelly stated he lives in the country and is unable to do many of the chores he used to do such as getting the firewood and general maintenance (TR. 129). Connelly has experienced no change in his ability to read or understand what he read (TR. 126).  He stated he watches four hours of television and listens to the radio one to two hours each day (TR. 126).  Connelly described his other hobbies as follows:

> woodworking, 4-5 hours a week
> hunting, 1 or 2 times a year for 5-10 days 8 hrs a day
> fishing, 6 or 7 weekends a year 6 to 8 hrs a day
> shooting & reloading, 1 or 2 times a month 2-3 hrs shooting 3-4
> hours reloading

TR. 126.

Connelly stated his ability to engage in these hobbies has changed since his disabling condition began because he is "unable to walk long distances and unable to stand for long periods.  Unable to lift over 30 lbs interferes with woodworking." (TR. 127). Connelly described his activities in clubs or social groups as follows:  "Member of American Legion & VFW.  Do parades and memorial ceremonies, work at food booths and prepare breakfast and dinners for fund raisers.  Parades and ceremonies 6 times a year.  Food booth 1 time a year.  Breakfast & dinners 10-12 times a year. Get along well." (TR. 127). Connelly explained he is "unable to help as much as [he] did before.  Cannot lift more than 30 lbs and unable to stand or walk for long without pain." (TR. 127).

Also on November 10, 2003, Connelly filled out a pain questionnaire describing his lower back pain as "dull aching and at times sharp stabbing pain" (TR. 130).  He clarified the dull pain was constant, but would become sharper with prolonged walking, standing, bending, or twisting (TR. 130).  The pain was alleviated by sitting or laying down and participating in an exercise program, but he was not taking any pain medication (TR. 130-131).  Connelly stated he could be active, including engaging in hobbies, for 30 to 60 minutes at a time before he needed to rest, and could not finish the tasks he started such as woodworking projects and home maintenance without help (TR. 131-132).  Connelly stated he occasionally walks up to one mile (TR. 131-132).

On November 12, 2003, the claimant's wife filled out a Function Report in support of his application for benefits (TR. 141-149).  Mrs. Connelly described the claimant's daily

8

activity as checking computer mail then sitting in a recliner to watch television or read (TR. 141).  Mrs. Connelly stated the claimant could no longer do automotive repair, split wood, or do general yard work including using a push mower, although he could operate a riding lawn mower, which he does for one hour every other week (TR. 142-143).  Mrs. Connelly stated the claimant could assist with shopping for about half an hour (TR. 144).  Mrs. Connelly stated the claimant could not lift over thirty pounds and his walking or standing is limited to about ten minutes at a time (TR. 146).

> ### D.    Administrative Hearing

At the administrative hearing on April 28, 2005, Connelly testified he was 62 years old and had not worked since October 2003 (TR. 304).  After graduating from high school, Connelly entered the United States Navy where he received training as an aviation electronics technician and retired, after twenty-one years of service, in 1982 (TR. 305). Thereafter, Connelly worked at the United States Post Office from 1986 until October 2003 (TR. 305).  At the Post Office, Connelly started as a clerk carrier and did assignments such as sorting mail, unloading trucks and delivering mail (TR. 305-06).  After some time, Connelly also worked at the mail window taking parcels, and wrote reports, moved mail bags and sorted mail (TR. 306).  Most recently, Connelly was assigned to various office maintenance and other jobs such as taking care of supplies and office equipment (TR. 306).

Connelly testified his back really began to bother him in 2002 (TR. 307).  In 2003, if he had to stand at the mail window, it felt like he had knives sticking in his back and the pain was excruciating (TR. 307).  Connelly testified the pain caused problems for him working with customers and he would get complaints (TR. 307).  Connelly sought treatment from his family physician, Dr. Petterson, who started Connelly with exercise and medication (TR. 308).  Ultimately Connelly was taking morphine sulfate, which is the only medication to take the back pain away (TR. 308).  After six or seven months of taking morphine, Connelly did not want to take it because of the side-effects including tiredness, constipation and lack of sex drive (TR. 317).  Connelly's new physician, when Connelly moved from Oregon to Nebraska, changed the prescription from morphine to a medication that did not

work (TR. 308, 315).  Connelly stopped taking the new medication after a few weeks (TR. 315).

Six months later he received a prescription for Naproxen, for pain relief (TR. 308, 315).  Connelly testified the Naproxen was losing its effectiveness over time (TR. 308, 312-13).  Connelly testified he did not get surgery for his back because he was told there was nothing that could be surgically done for him at this time (TR. 309, 316).  Connelly stated he has not tried periodic epidural steroid injections, which was suggested by his physician (TR. 309).  Connelly testified that he walks for exercise when he can, and tries to complete thirty minutes each day, but his back may hurt after only fifteen to twenty minutes (TR. 309-10, 312).  Connelly testified he has constant pain in his lower back at a level 4, out of 10, even when taking Naproxen (TR. 312).  Since his MRI, Connelly has not seen a doctor about his back pain aside from having his pain medication prescription refilled (TR. 313-14, 316).

In August 2002, Connelly underwent an MRI scan and met with Dr. Gehling, a neurosurgeon, who suggested conservative therapy including exercise and anti-inflammatory medication (TR. 310).  Dr. Gehling and Dr. Petterson initially recommended Connelly could perform light-duty work (TR. 310).  However, Connelly explained he could no longer perform light-duty work because of the pain (TR. 311).  Connelly described the pain he felt even after the postmaster changed his duties to light duty (TR. 311).  For example, for one week, Connelly attempted to sort mail, although another employee had to carry the 20-25 pounds tubs of mail to him (TR. 311).  Connelly testified that after a half hour of sorting mail, from a standing position, he would be in excruciating pain due to the twisting motion required to complete the job (TR. 311).  After that, Connelly was assigned to the computer forwarding system where he was to check the undeliverable mail and repackage it (TR. 312).  The job required sitting which caused Connelly pain after only "so many minutes" before he would have to walk around (TR. 312).

Connelly described his typical day as rising at 7:00-7:30 a.m. and eating toast to take his medication (TR. 317).  Connelly states he reads the newspaper and works on his computer, then works in his tool shop and helps with yard work (TR. 317).  The chair he uses with the computer allows him to lean back to relive back pain (TR. 318).  Connelly

10

takes a nap for approximately an hour, then returns to work outside in the yard or his shop (TR. 317).  When his back is hurting, Connelly reclines with his feet elevated and reads (TR. 317).  Connelly testified that when the medication is working he will have only two-three bad days each week, which requires him to sit in the recliner (TR. 318-319).  Connelly testified the pain also depends on his level of activity (TR. 318-319).  For example, if he lifts more than ten to fifteen pounds his back will hurt really bad for two or three days (TR. 319).  Connelly states he can only stand in one place for ten to fifteen minutes at a time before he feels pain and has to walk around or sit down (TR. 319).  Connelly states he is losing the strength in his hands and arms and has difficulty reaching, grasping and lifting objects (TR. 319).  Connelly described his computer use by stating if he uses the mouse his hand may go numb (TR. 319).  Additionally, he spends only fifteen to thirty minutes sitting at the computer at a time before he has to move around, but sometimes for as much as three to four hours in one day (TR. 320).

A vocational expert (VE) under contract with the Office of Hearings and Appeals testified at the administrative hearing (TR. 15, 320-26).  The ALJ posed hypothetical questions to the VE which included an individual with an onset at age 58 or 59 and of Connelly's education, and experience; who could occasionally lift twenty pounds, frequently lift or carry ten pounds; who could stand or walk for six hours in an eight-hour day, and who could sit for six hours in an eight-hour day (TR. 322).  The individual would have no restrictions on the use of his hands, but should avoid concentrated exposure to vibrations or cold (TR. 322).  The individual could occasionally climb, balance, stoop, kneel, crouch, or crawl (TR. 322).  The VE testified such an individual would be capable of performing Connelly's past relevant work as a Post Office clerk as well as a mail handler (TR. 322).  Further, these types of semi-skilled jobs are available in sufficient numbers in the regional and national economy (TR. 322-23).

The ALJ added results of the duty status report completed by Dr. Gehling after examination of Connelly on August 13, 2002 (TR. 210- Exhibit 2F/9).  The report compared the usual work requirements of the employee to the employee's ability (TR. 210).  Dr. Gehling indicated Connelly could lift seventy pounds occasionally and walk for four hours a day, as required by the job (TR. 210).  Additionally, Dr. Gehling noted that rather than

being able to stand for six hours continuously, Connelly could stand for one hour at a time (TR. 210).   With the additional information, the VE testified the employee would be able to return to the previous work as a Post Office clerk (TR. 324-325).  However, taking into consideration the limitations in Dr. Petterson's October 25, 2004 Medical Impairment Evaluation, which indicated Connelly could sit for only two hours a day with no walking or standing, lift up to ten pounds occasionally and never lift over twenty pounds or carry over ten pounds (TR. 257), the VE stated the claimant would be precluded from all work (TR. 325).  Finally, the VE opined that if Connelly's own description of his physical limitations and level of pain were found credible, Connelly could not perform any of the semi-skilled jobs discussed (TR. 326).  The VE's opinion was based primarily on Connelly's statements regarding being able to walk 15 to 30 minutes before the pain increases, feeling constant pain, being able to lift only 10 to 15 pounds, sleeping about an hour each day and having to recline on bad days to relieve the pain (TR. 326).

## THE ALJ'S DECISION

The ALJ concluded Connelly was not disabled under the Act and was not entitled to disability benefits (TR. 25-26).  The ALJ framed the issues as:  whether the claimant was entitled to a period of disability and disability insurance benefits under sections 216(i) and 223 of the Act; and more specifically whether the claimant was under a disability (TR. 15). As noted by the ALJ, the Act defines "disability" as an inability to engage in any substantial gainful activity due to physical or mental impairments (TR. 15).  42 U.S.C. § 423 (D)(1)(A) (2004); 20 C.F.R.  § 404.1505 (2006). These impairments must be expected to result in death or must last for a continuous period of at least 12 months.  *Id.*

The ALJ must evaluate a disability claim according to the sequential five-step analysis prescribed by the Social Security regulations.  **See *Goff v. Barnhart***, 421 F.3d 785, 789-90 (8th Cir. 2005); 20 C.F.R. §  404.1520(a)-(f).

> During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past

relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

**Goff**, 421 F.3d at 790 (citation omitted).  More specifically, the ALJ examines:

> [A]ny current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and age, education and work experience.  **See** 20 C.F.R. § 404.1520(a); **Braswell v. Heckler**, 733 F.2d 531, 533 (8th Cir. 1984).  If the claimant suffers from an impairment that is included in the listing of presumptively disabling impairments (the Listings), or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled without considering age, education, or work experience.  **See Braswell**, 733 F.2d at 533.  If the Commissioner finds that the claimant does not meet the Listings but is nevertheless unable to perform his or her past work, the burden of proof shifts to the Commissioner to prove, first, that the claimant retains the residual functional capacity to perform other kinds of work, and, second, that other such work exists in substantial numbers in the national economy.  **See Nevland v. Apfel**, 204 F.3d 853, 857 (8th Cir. 2000).  A claimant's residual functional capacity is a medical question.  **See id.** at 858.

**Singh v. Apfel**, 222 F.3d 448, 451 (8th Cir. 2000).  "If a claimant fails to meet the criteria at any step in the evaluation of a disability, the process ends and the claimant is determined to be not disabled."  **Pelkey v. Barnhart**, 433 F.3d 575, 577 (8th Cir. 2006) (citation omitted)).

In this case, the ALJ followed the appropriate sequential analysis.  The ALJ reviewed the record and found Connelly had not engaged in any type of substantial and gainful work activity since his alleged onset date (TR. 16).  Next, the ALJ found Connelly's medically determinable impairment, mild degenerative disk disease with spinal stenosis at L4-L5, could reasonably be expected to produce the type of symptoms Connelly described (TR. 19-20).  Further, the ALJ determined Connelly's impairment was a "severe" medical impairment under the Act, but not severe enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (TR. 17).  The ALJ proceeded to step four to determine Connelly's residual functional capacity (RFC) (TR. 17-23).

13

In assessing RFC, the ALJ, citing 20 C.F.R. § 404.1529 and SSR 96-7p, discounted Connelly's credibility as to the severity of his symptoms and his inability to function (TR. 21-22). The ALJ found that Connelly's allegations were inconsistent with his own reports of daily activity during the hearing, in a questionnaire and in reports to his physicians (TR. 22). The ALJ stated, "considering activities, such as reading the newspaper or working at the computer, the undersigned finds that these activities suggest a level of concentration inconsistent with a disabling level of pain" (TR. 22). Additionally, the ALJ considered the claimant's use or non-use of pain medication (TR. 22). Specifically, in November 2003, the claimant filled out a pain questionnaire stating "he experienced dull pain most of the time. . . and that he took no pain medication at that time, but was on an exercise regimen" (TR. 22, TR. 130 - Exhibit 8E). Also, the ALJ noted, that in June 2004, the claimant "limits his activities to preserve his narcotics" (TR. 22, 233 - Exhibit 6F/1). However, the "disabling pain described by the claimant would preclude the preservation of narcotics" (TR. 22). Finally, the ALJ finds incredible the claimant's assertion that he cannot stand (TR. 22). The ALJ found the assertion to be inconsistent with the claimant's report of daily activities including shooting, woodworking, hunting, and fishing (TR. 22). Based on these findings, the ALJ determined the claimant's pain may not be as severe as alleged (TR. 22).

The ALJ also found the medical record to contain evidence inconsistent with Connelly's claim of an inability to perform any sustained work activity (TR. 20). In evaluating the medical evidence, the ALJ assigned the greatest weight to Dr. Long's opinion, which was based on clinical findings and MRI, while assigning less weight to the opinions of Drs. Petterson and Jones (TR. 21). The ALJ reasoned that Dr. Long was "an examining physician" and board-certified in neurological surgery, which gives Dr. Long knowledge, training and a perspective not shared by Drs. Petterson and Jones, who are treating physicians and board-certified in family practice (TR. 21). The ALJ particularly relied on Dr. Long's opinion that the claimant has mild degenerative disk disease, without radicular complaints, the claimant does not require surgical intervention and the claimant should be treated with conservative treatment modalities, including nonsteroidal anti-inflammatory medications, periodic epidural steroid injections and exercise (TR. 21, 261).

14

On April 21, 2003, the Office of Personnel Management, Federal Employees Retirement System, (OPM) approved Connelly's application for disability retirement (TR. 81-83). The approval does not state the rational or basis for the decision. The ALJ mentioned the claimant's disability retirement by stating, "the claimant was approved for disability retirement by the [OPM]; however, the Social Security Administration is not bound by the same rules and regulations, with respect to a finding of disability" (TR. 21). The ALJ did not state what relevance was given to the OPM decision or make any other reference to it.

Based on the ALJ's evaluation of the evidence, the ALJ determined the evidence does not support a finding of disability. The ALJ found Connelly has the following RFC:

> He can lift/carry 10 pounds frequently and 20 pounds occasionally; he can sit for 6 hours in an 8-hour workday and he can stand/walk 6 hours in an 8-hour workday. Further, the claimant is precluded from performing tasks requiring more than occasional climbing, balancing, kneeling, or crouching; and he must avoid concentrated exposure to cold and vibration. The claimant has no restriction in the use of the hands.

TR. 22-23.

The ALJ further determined that although Connelly has a medically determinable impairment, Connelly can still perform his past relevant work as a post office clerk based on the job's functional demands and how the job is customarily performed in the national economy (TR. 23-24). This is because the position of post office clerk does not involve performance beyond the claimant's RFC (TR. 23-24). The ALJ also determined the claimant can perform a significant range of light work as defined in 20 C.F.R. § 404.1567 (TR. 23-24). Accordingly, the ALJ determined that even if the claimant were unable to return to work as a post office clerk, he is capable of making a successful adjustment to work that exists in significant numbers in the national economy (TR. 24). Therefore, the ALJ found Connelly was not under a disability, as defined by the Act, at any time through the date of the decision (TR. 24-25).

Connelly appeals the ALJ's findings on five grounds: (1) the ALJ failed to accept as controlling the limitations placed by the claimant's treating physician, Dr. Petterson; (2) the

ALJ failed to give Dr. Petterson's opinions the greatest weight under the circumstances; (3) the ALJ failed to incorporate all of the claimant's documented limitations and conditions into the hypothetical questions posed to the vocational expert (VE); (4) the ALJ failed to properly evaluate the 2003 disability determination of the Office of Personnel Management, Federal Employees System (Post Office); and (5) the ALJ improperly applied the *Polaski* factors when evaluating the claimant's credibility regarding subjective allegations of his physical condition.  **See** Filing No. 14. The court will address each issue below.

## STANDARD OF REVIEW

A district court is given jurisdiction to review a decision to deny disability benefits according to 42 U.S.C. § 405(g).  A district court is to affirm the Commissioner's findings "if supported by substantial evidence on the record as a whole."  **Forte v. Barnhart**, 377 F.3d 892, 895 (8th Cir. 2004).  "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." **Id**. "Whether the record supports a contrary result or whether we might decide the case differently is immaterial."  **Tellez v. Barnhart**, 403 F.3d 953, 956 (8th Cir. 2005).  As long as substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence would also support a different conclusion or because a district court would decide the case differently.  **Brown v. Barnhart**, 390 F.3d 535, 538 (8th Cir. 2004).  "[I]t is the court's duty to review the disability benefit decision to determine if it is based on legal error."  **Nettles v. Schweiker**, 714 F.2d 833, 835-36 (8th Cir. 1983).  Questions of law are reviewed de novo.  **See Olson v. Apfel**, 170 F.3d 822 (8th Cir. 1999).  Findings of fact are considered conclusive if supported by substantial evidence on the record as a whole.  **See Nettles**, 714 F.2d 833.

"Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion."  **Pelkey v. Barnhart**, 433 F.3d 575, 577 (8th Cir. 2006) (citation omitted).  The reviewing court considers "the whole record, including evidence that supports as well as detracts from the Commissioner's decision, and [ ] will not reverse simply because some evidence may support the opposite conclusion." **Id.** at 578; **Warburton v. Apfel**, 188 F.3d 1047, 1050 (8th Cir. 1999) (The court "may not

reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome."). Furthermore, "[the court] defer[s] to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Pelkey*, 433 F.3d at 578 (**quoting *Guilliams v. Barnhart***, 393 F.3d 798, 801 (8th Cir. 2005)); **see also *Burress v. Apfel***, 141 F.3d 875, 878 (8th Cir. 1998) (noting "substantial evidence in the record as a whole" standard is more rigorous than the "substantial evidence" standard)).

## DISCUSSION

### A.   The ALJ'S Consideration of Medical Evidence

Connelly argues the ALJ improperly failed to give the proper weight to certain medical evidence, particularly the medical evidence from Connelly's treating physician, Dr. Petterson. Connelly contends the ALJ should have afforded Dr. Petterson's opinions considerable weight based on Dr. Petterson's long-term treating relationship with the claimant. **See** 20 C.F.R. § 404.1527(d). Connelly argues the ALJ improperly relied assigned more weight to the opinions of Dr. Long, however Dr. Long did not mention specific physical capacity limitations. Connelly argues the ALJ improperly rejected unrebutted evidence and interpreted raw medical data such as an MRI.

Under the regulations, the ALJ is to consider whether there was an examining or treating relationship; the length, frequency and nature of any treatment; whether the medical opinions are supported by objective and other evidence; the consistency of the medical opinion with the record as a whole; and medical specialization of the doctor giving the opinion. 20 C.F.R. §404.1527(d). "A treating physician's medical opinion is given controlling weight if that opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" ***Choate v. Barnhart***, 457 F.3d 865, 869 (8th Cir. 2006) (alteration in original) (**quoting** 20 C.F.R. § 404.1527(d)(2)); **see *Tindell v. Barnhart***, 444 F.3d 1002, 1006 (8th Cir. 2006). "[The court] will uphold an ALJ's decision to discount or even disregard the opinion of a treating physician where 'other medical assessments are supported by better or more thorough medical evidence, or where a treating physician

17

renders inconsistent opinions that undermine the credibility of such opinions.'" **Choate**, 457 F.3d at 869 (**quoting *Reed v. Barnhart***, 399 F.3d 917, 920-21 (8th Cir. 2005)).  However, the regulations require "that the [ALJ] will always give good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s), *i.e.*, an opinion(s) on the nature and severity of an individual's impairment(s)."  Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, SSR 96-2p, 1996 WL 374188 at *5 (July 2, 1996); **see** 20 C.F.R. § 404.1527(d)(2).

The ALJ did not give significant weight to Dr. Petterson's opinions regarding Connelly's limited ability to sit, stand, walk or lift.  Specifically, on October 25, 2004, Dr. Petterson gave the opinion that Connelly could only sit for two hours in an 8-hour workday and could not walk or stand for any length of time (TR. 254-259).  Additionally, Dr. Petterson opined Connelly could never lift more than twenty pounds, but could occasionally lift up to ten pounds (TR. 257).  Previously, on January 17, 2003, Dr. Petterson gave the opinion that Connelly could not stand greater than thirty minutes at a time (TR. 242).  Dr. Jones' January 25, 2005 treatment notes do not indicate specific limitations, but state Connelly's condition "caused significant disability and functional impairment" (TR. 185).  In contrast, Dr. Alley, a non-examining physician opined Connelly could occasionally lift or carry twenty pounds and frequently lift or carry ten pounds (TR. 212).  Dr. Alley further determined Connelly could stand or walk for six hours and sit for six hours in an 8-hour workday (TR. 212).  Dr. Long did not include any physical limitation suggestions (TR. 261).  Although the ALJ gave more weight to Dr. Long's opinions than was given to the opinions of Drs. Petterson and Jones, Dr. Long was not a treating physician and the record indicates he likely did not personally examine Connelly (TR. 261-266).

The Commissioner argues the ALJ may reject the opinion of any physician, if the record supports a contrary conclusion.  Additionally, the Commissioner contends the ALJ may credit a consultative physician's opinion over that of a treating physician in this case.  The Commissioner argues more weight should be afforded to Dr. Long's opinion because he is board-certified in neurological surgery, rather than a family practitioner.  The Commissioner contends the claimant's testimony, questionnaires and reports to physicians

18

support the amount of weight given to the physicians' opinions. Specifically, the claimant stated he could stand two hours and walk three hours during an 8-hour workday. Similarly, the Commissioner contends the other physicians' reports are inconsistent with Dr. Petterson's opinions.

"The opinion of a consulting physician who examines a claimant once . . . does not generally constitute substantial evidence." *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003) (citation omitted). However, there are two exceptions to this general rule. *Id.* The court "will uphold the ALJ's decision to credit a one-time consultant and discount a treating physician's opinion '(1) where [the one-time] medical assessments are supported by better or more thorough medical evidence, or (2) where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Id.* at 812-13 (*quoting Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000)).

Neither exception applies in this case. Dr. Petterson treated Connelly for fifteen years, received consultation from a neurologist regarding the treatment options and attempted many methods for treating the pain before prescribing narcotics. Although the ALJ states Dr. Long based his opinions on clinical findings and MRI, the evidence shows Connelly was examined by Charley S. Pugsley, PA-C, possibly under Dr. Long's supervision, on one occasion (TR. 264-266). Additionally, Dr. Long's September 29, 2004 letter states only that his opinion is based on MRI and the claimant's complaints of "back pain only" (TR. 261). Dr. Alley's opinions were based on the medical record through December 17, 2003 (TR. 211-216). Accordingly, neither Dr. Long's nor Dr. Alley's opinions were based on better or more thorough medical evidence than was available to Dr. Petterson.

Further, the Commissioner states Dr. Petterson was inconsistent in the October 2004 report when Dr. Petterson stated the claimant could stand or walk 'none' in an eight-hour workday, yet later indicating the claimant needs to shift every hour between sitting, standing, and walking (TR. 257-258). Dr. Petterson's seemingly inconsistent statements that Connelly's condition was "stable" and his pain was "well controlled" was based on Connelly's limited physical activity use of morphine for pain relief (TR. 233). These same activity limitations and use of medicine led to Dr. Petterson's opinion about

19

Connelly's inability to work full or part-time (TR. 259). The ALJ did not rely on any internal inconsistencies in Dr. Petterson's opinions. The court concludes such "inconsistencies" do not undermine Dr. Petterson's credibility with regard to the substantive opinions. Neither of the exceptions apply to the general rule apply, therefore Dr. Long's opinion does not constitute substantial evidence in the record.

Furthermore, while the ALJ "generally give[s] more weight to the opinion of a specialist about medical issues related to his or her specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5); **see *Qualls v. Apfel***, 158 F.3d 425, 428 (8th Cir. 1998) ("More importantly, although a treating physician's opinion is considered to be significant, specialists' opinions are generally afforded more weight."). Dr. Long's opinion primarily addresses the issue of whether Connelly was a candidate for surgery, rather than make any remark about Connelly's suspected level of pain or physical limitations. Finally, Dr. Long's opinion that surgical intervention is not indicated and Connelly should continue with a non-operative management regimen provides no opinion, inconsistent or otherwise, about Connelly's level of functionality. Accordingly, Dr. Long's opinions cannot outweigh Dr. Petterson's impairment evaluation opinions.

### B.    Office of Personnel Management Decision

The claimant contends the ALJ erred by providing no explanation for rejecting the April 21, 2003 OPM disability determination. **See** Filing No. 14 p. 13. Specifically, the claimant argues the OPM "evidently" relied upon Dr. Petterson's earlier medical opinions regarding the claimants physical limitations including (1) no standing greater than thirty minutes, (2) no lifting greater than thirty pounds, and (3) no bending, twisting or other activity which would aggravate back pain. The claimant also notes the Post Office accommodated his limitations as best it could when he could not complete his altered duties, the OPM granted disability.

The ALJ is not bound by the disability determination of another agency. **See** 20 C.F.R. § 404.1504 (1998). The Eighth Circuit has held "findings of disability by other federal agencies, even though they are not binding on an ALJ, are entitled to some weight and must be considered in the ALJ's decision." ***Morrison v. Apfel***, 146 F.3d 625, 628 (8th

Cir. 1998).   "A 1992 memorandum from the Social Security Administration's Chief Administrative Law Judge to the Office of Hearings and Appeals field personnel reminded 'all ALJs and decision writers that even though another agency's determination that a claimant is disabled is not binding on SSA. . . , the ALJ must evaluate it as any other piece of evidence, *and address it in the decision.*'"   ***Id.*** (**quoting** Memorandum, Social Security Administration Office of Hearings and Appeals, (Oct. 2, 1992), at 3); SSR 06-03p, 71 Fed. Reg. 45593, 45596 (Aug. 9, 2006).

The ALJ did address the OPM decision by citing to it in the opinion.   Although the ALJ did not specifically address the reasons for disregarding the OPM decision, the ALJ did not err because she fully considered the evidence underlying the OPM's final conclusion.   **See *Pelkey v. Barnhart***, 433 F.3d 575, 579 (8th Cir. 2006).   Further, the arguments made by the claimant are focused on other parts of the record, rather than the OPM decision itself.   Here, there is no lengthy, reasoned decision from the OPM, the OPM decision is a three-page document informing the claimant of the final decision and procedural information.   **Compare *Pelkey***, 433 F.3d at 579 **with *Morrison***, 146 F.3d at 628.   Finally, the ALJ's final determination is not necessarily inconsistent with the OPM decision.

## C.   Residual Functional Capacity

Connelly argues the ALJ's finding that he has the residual functional capacity (RFC) for his past relevant or other work is not supported by the substantial evidence on the record.   Connelly contends the ALJ erred by not finding credible all of his alleged limitations.   Connelly also argues it is difficult to determine from the ALJ's opinion how she discredited him because his daily and other reported activities do not support a finding he is capable of full-time employment.   Connelly specifically references the difference between the activities he reported in the November 2003 daily activity and pain questionnaires and his later reports of his inability to engage in his hobbies or other activity.   Further, the ALJ made no mention of the third-party report submitted by Mrs. Connelly.   Finally, the ALJ discounted Connelly's allegations of pain based on his discontinuance of morphine without taking into consideration Connelly's stated reason that the side-effects of morphine were

21

causing him other problems.  The ALJ also discounted Connelly's allegations of pain because he was being treated conservatively, without surgical intervention, even though no physician recommended surgery.

RFC is the most an individual can still do after considering the effects of all of his impairments on the ability to perform work related tasks, and is based on all of the relevant evidence in the case record.  **See** 20 C.F.R. § 404.1545(a); ***Raney v. Barnhart***, 396 F.3d 1007, 1010 (8th Cir. 2005).  RFC is an assessment based on all appropriate evidence including:  observations by treating or examining physicians and family; medical records; and the claimant's own description of his limitations.  §§ 404.1545(a)-(c), 416.945(a)-(c).  The ALJ bears the primary responsibility for assessing a claimant's RFC at the administrative law judge hearing level.  **See** § 404.1546; ***Roberts v. Apfel***, 222 F.3d 466, 469 (8th Cir. 2000).  Since,

> residual functional capacity remains a medical question[, ] some medical evidence must support the determination of the claimant's [residual functional capacity], and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.  The ALJ is therefore required to consider at least some supporting evidence from a [medical] professional.

***Krogmeier v. Barnhart***, 294 F.3d 1019, 1023 (8th Cir. 2002) (internal quotations and citations omitted).

In determining a claimant's RFC, the ALJ must evaluate the claimant's credibility.  ***Guilliams v. Barnhart***, 393 F.3d 798, 801 (8th Cir. 2005).  "The credibility of a claimant's subjective testimony is primarily for the ALJ to determine."  ***Tellez v. Barnhart***, 403 F.3d 953, 957 (8th Cir. 2005).  A claimant's subjective complaints of pain may be discredited if inconsistencies exist in the record as a whole.  **See *Guilliams***, 393 F.3d at 801-02.  In evaluating subjective complaints of pain, an ALJ is to examine objective medical evidence in addition to the factors set forth in ***Polaski v. Heckler***, 739 F.2d 1320 (8th Cir. 1984).  These factors include:  (1) the claimant's day to day activities; (2) the duration, intensity, and frequency of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of pain medication; and (5) functional restrictions.  ***Polaski***, 739 F.2d at 1322.

The ALJ applied the correct legal standard in evaluating Connelly's credibility as to his symptoms and the effect, if any, those symptoms have on his ability to function.  In determining a claimant's complaints of pain are not credible, the ALJ must give the reasons for discrediting the testimony and explain any inconsistencies found.  *Guilliams*, 393 F.3d at 802.  The ALJ found Connelly's subjective complaints were inconsistent with the record as a whole.  Specifically, the ALJ noted Connelly's allegations were inconsistent with his own reports of activity and failure to take pain medication.  The ALJ analyzed Connelly's testimony pursuant to 20 C.F.R. § 404.1529 and SSR 96-7p, and discredited his credibility.  Because the ALJ applied the correct legal standards, the court must take the ALJ's findings of fact as conclusive if supported by substantial evidence on the record as a whole.  **See Nettles**, 714 F.2d 833.

The ALJ entirely discounted Connelly's testimony.  Connelly described the activities which cause him pain, the duration and severity of pain and his methods for alleviating the pain.  Connelly's testimony is consistent with his medical records, with his prior statements and the statements of Mrs. Connelly.  The record evidence shows a sharp decrease in Connelly's activities over time.  The evidence shows the decrease in activity was coupled with the use of narcotics and other medication to manage pain.

The court concludes the ALJ failed to conduct a proper *Polaski* analysis supported by the evidence.  The ALJ failed to consider the duration, frequency and intensity of Connelly's back pain, the precipitating and aggravating factors of the pain such as activity and movement, and dosage, effectiveness and side-effects of the pain medications.  Further, the ALJ failed to consider Connelly's functional limitations in terms of pain management.  The record demonstrates the ALJ's credibility analysis in determining Connelly's subjection pain complaints were not based on substantial evidence in the record as a whole.  Accordingly, the court finds the credibility determination was not based on substantial evidence.

### D.  Questions Posed to Vocational Expert

A vocational expert's hypothetical questions are proper if they sufficiently set out all of the impairments accepted by the ALJ as true, and if the questions likewise exclude

23

impairments that the ALJ has reasonably discredited.  **_Pearsall v. Massanari_**, 274 F.3d 1211, 1220 (8th Cir. 2001).  Because the court has concluded the ALJ improperly analyzed Connelly's subjective complaints of pain, and because the court concludes the ALJ failed to give proper weight to the medical opinions offered in this case, specifically including her failure to adopt the physical restrictions set forth by Dr. Petterson in the RFC evaluation, the ALJ's opinions provided in reliance upon the VE's testimony are not supported by substantial evidence.  However, the hypothetical questions posed to the VE were inadequate because the ALJ included a question incorporating the physical restrictions set forth by Dr. Petterson.

## CONCLUSION

When reviewing an ALJ's opinion not to extend benefits, the court will affirm the ALJ's opinion if it is supported by substantial evidence on the record.  Substantial evidence supporting the ALJ's decision is lacking given the opinion of Connelly's treating physicians, Connelly's credibility determination and the record evidence as a whole.  Accordingly, this court concludes the ALJ's decision that Connelly is not disabled is unsupported by substantial evidence in the record as a whole.  Connelly contends that since the VE was asked hypothetical questions incorporating the physical limitations noted by Dr. Petterson, the case need not be remanded.  The claimant argues the case may be remanded for a determined of an appropriate award of benefits.  The court agrees.  Upon consideration,

**IT IS ORDERED**:

The decision of the Commissioner is reversed and benefits are awarded.  A separate judgment in favor of the claimant will be entered in conjunction with this order.

DATED this 9th day of March, 2007.

BY THE COURT:

 s/Thomas D. Thalken
United States Magistrate Judge

24